Good morning, Your Honor. Michael Feinberg representing Ronald Grayson, the appellant in this matter. The issue in this appeal is relatively narrow. The question is whether certain funds that were held pursuant to an injunctive order entered by the Superior Court that were held pro – that were in a blocked account at the time the debtor filed bankruptcy are to be considered in computing the debtor's non-contingent liquidated unsecured debts for purposes of Chapter 13 eligibility. Kagan. Mr. Feinberg, it seems to me that this turns on the fact that those blocked funds or escrowed funds or funds put in an attorney's trust fund were done in order to basically keep those assets from being dissipated. I think that's right. Because he – it just has nothing to do with whether he still had a debt. Doesn't that just end it? Well, no. I don't think that he still has a debt. I think if you – you have to look at what the actual property interests in – in those funds are. Clearly, he had a debt for the $31,000 of the Baker proceeds money that wasn't deposited into the account. But what about the – what about – about it shows that he didn't have a $230,000 debt? It just doesn't show anything about that. If anything, it's the opposite. But never mind that. It doesn't show a debt. Excuse me. It doesn't – excuse me. It doesn't – it doesn't show that he did not have a debt. Well, the question is, our position is that – well, let's take this on two steps. First, the claim against – the claim as framed by the complaint was that these very $231,000 was the – Mr. Tanaka's money. Well, it was – and that was the dispute. That was the dispute. The question was, was it Mr. Tanaka's money? And until that dispute was resolved, it wasn't Mr. Tanaka's money. It was sitting in a bank account of the attorney's. And she didn't have it, and she wasn't going to get it until somebody decided whether it was owed to her or not. Isn't that what a debt is? Well, that is. But the question is, I think she was claiming that she was owed this money in species. I don't think it's any different than if we're talking about a thing rather than a debt. If this was, say, a stock certificate, and Mr. Grayson put – Well, she still didn't have it. It was just put aside to be sure that whoever it was entitled to it would get it eventually. But it didn't resolve the question of who it belonged to, as between the two of them. Well, the decision of the Court was that the money was always hers even before Well, meaning in a legal conceptual sense, i.e., once you decide any lawsuit as to ownership, then you've decided something retroactively. But before that decision was made, it wasn't hers. But I have a different question, which is, why isn't it secure? Well, that would be my next question. Assuming that it is a debt, it would seem to me tantamount, and we rely primarily on the Clark v. Davis case out of the First Circuit, that it would be secure. I didn't know. I did read the case. I don't see the relevance of it. You didn't assume it? I don't see the relevance of it. It wasn't about any – it wasn't about this conceptual problem at all. It wasn't about the statute. It wasn't about what a secure debt is for purposes of the Bankruptcy Act. No, it wasn't. I mean, the issue in Clark was whether the money that was held by – in the trust account was part of – was property of the estate. I mean, here, if this is Ms. Tanaka's money, clearly there's no way that that money can ever be dispersed out of that court without her receiving payment. The bankruptcy code defines a secured claim as a lien against property of the estate. If you're taking the position that Mr. Grayson still had an interest in the property and that he owed her this, then by placing the property in the custody of the court, she effectively gave him a secured interest. It's a case of – But this is odd because it's cash, fungible. It's not stock certificates. It's not a house. It's cash. And in a bank account. If Davis says anything, it says that it's not – that's not property of the estate. Right. That money is property of the estate, right? Correct. So if it's not property of the estate, then how is it a security interest in property of the estate if it's not property of the estate? Well, if it's not property of the estate, then Mr. Grayson doesn't have any interest in the money, even at the time. He doesn't have any interest in this particular money sitting in that bank account, but he still has a debt to Ms. Tanaka. They're doing out the same. But the question is, Ms. Tanaka is only entitled to a single satisfaction either. I mean, and that's what we have in a secured debt. Either you get the property or you – How do you get a lien arising? I don't understand. What gives rise to the lien? There's no judgment. There's no adjudication yet of the debt. It's somewhat akin to a prejudgment attachment. I mean, a creditor who attaches property pre-petition doesn't have a judgment either. What he does is he has a debt and the sheriff takes the property into its custody to assure that there will be a fund against which the creditor can collect, assuming the creditor obtains a judgment at the conclusion of the case. And this is essentially the same thing. I mean, clearly – Well, is it the same thing? I mean, the problem here is that we don't know what, if any, of the $230,000 is Mr. Grayson's or not. And we don't know how much the debt is to Ms. Tanaka because the court hasn't made that determination yet. But isn't that always the question in a prejudgment attachment? You attach a property prior to the judgment and then ultimately when the court the superior court judge that you are entitled to the attachment. And that is usually done by proving up a promissory note secured by some kind of a security instrument, a first deed of trust or whatever it is, that establishes that there is a mechanism by which this debt has been secured. And I don't see how you have that here. Well, where nobody knew based on the way Mr. Grayson did business what portion of the money that had been used to invest in the three real estate parcels was Grayson's money, whether any of Ms. Tanaka's money was involved, what expenses were fairly attributable to what. I mean, it's clearly unliquidated in that sense. We don't know whether or not he owes her anything at all at this point, do we, when the money is put into the account? No, we don't. We won't know that until... And isn't that different from C First Bank coming in with a mortgage for $130,000 saying here's our note secured by the deed of trust and we want pre-judgment attachment of this race that we found out that the debtor has, that we're afraid he's going to disperse before the court can determine and enter the turnover order? It is different. But again, Your Honor, I think the pre-judgment statute goes further than simple contract debts. I mean, one of the requirements would be a debt incurred by fraud, which is essentially what we're talking about here. And I would also suggest in answer to Your Honor's other question that the standard for obtaining a preliminary injunction in Washington and Superior Court is far higher than it is to obtain an attachment. I mean, she had to make the same showing because one of the requirements of a preliminary injunction in Washington, which we're talking about here, is a likelihood of prevailing on the merits. In the question of an attachment, the standard is simply probable cause to believe the debt is owed, which is even a lower standard than preponderance of the evidence. I mean, it's essentially what it would take to get, as I understand, I don't do criminal law, but essentially what I understand it would take to get a warrant in a criminal case. And that's what I'm talking about. Is there a definition, either in the statute or in a case law, of what is a secure claim or a secure debt? Well, the statute, there are two definitions, and they're both in the statute. There's a definition of a secured claim, which appears in 506. And it says Bear with me. It's 506A1. 506A1, correct. And I believe, I don't know, you have it in front of you. All right. So this goes back to what I was saying before. It seems to require, as a technical matter, that the property be in the estate in order to have a secured interest in it. Correct. And under Davis, this is not in the estate at all. This bank account, as opposed to the debt, or the obligation as part of the bankruptcy, but the money in the bank account is not in the estate. No. What is in the estate is Mr. Grayson's claim to the money. I think that's what the effect would be. He would have a contingent claim. His beneficial interest in whatever this race is, to the extent established by the Court, is what comes into the case under Davis. I'd like to reserve the rest of my time. Certainly. Good morning. Cynthia Cooner appearing on behalf of the appellee. Your Honors, you hit right the issue of what a lien is. And 506a.1 speaks of both the lien in the property and the extent of the creditor's interest in that property. The appellant would have you believe that Ms. Tanaka had some type of interest that had been determined in these proceeds, when, in fact, that determination had never been made. And when we talk about prejudgment attachment, that is a statutory creature that creates a lien. The case law that the appellant relies on, that, too, relies on statutory authority and definition of property interest. In the Davis case, the Court, when it talks about the escrow arrangement, talks about the fact that under the main law, and talks about the fact that in main law, a receiver takes title to those to the funds in question and defines statutorily what the interest in those proceeds are. The same thing in Mabee, where the court clerk acquires those funds by a creature of statute. Here, the appellant cannot point to any type of, you know, it's termed in the bankruptcy court's order an escrow, but we have no escrow agreement. We have no terms as to the nature of the blocked agreement. And, in fact we do have, which, in some sense, is the essence of what a secured interest is, is an assurance that once the determination of the underlying dispute is made, the money is there. The funds won't be dissipated, but there's no granting of an interest at the point that the injunction is entered by the State court. There's no granting of any type of property interest to miss to knock at that juncture. What is the purpose of the secured debt part of the test of what you're saying counts towards a Chapter 13? Do you have any idea? Your Honor, it's simply that the unsecured debt limitation and what the congressional intent was to that, I really can't speak to that. But we can't establish that Miss Tanaka was a secured creditor because there's no, under both the statutory definition and under the documentation at the time that the funds were preserved, there's no granting of any type of security interest. There's simply a preservation of those funds subject to later determination. What was the superior court's reason for ordering the escrow in the attorney's trust account? You know, I have to assume, and I was not involved in that State court litigation, so I did not appear at any of those hearings, but there was a great deal of fraud that was being alleged and a violation of fiduciary agreements relative to a trust. And I have to assume with that being wafted in front of the court, there was a concern about further dissipation of funds, given that there was already an allegation of that nature. So Miss Tanaka convinced Judge Alstorf that she had invested a million and a half over the years with Mr. Grayson, and she made a showing that he had engaged in fraud with the money. And then she said, and here's 230,000 that we know that he's getting from these three real estate contracts, will you please impound those funds until we can determine who has the title to- I actually believe there's probably no convincing at that juncture of the trial court since substantive determinations were made primarily in the bankruptcy court. The case was- Did we have a copy of the superior court's order establishing the trust account in the bankruptcy record? Do we know what Judge Alstorf was making when he signed it? And it does not speak to, it's simply at that point is blessing what the parties have subsequently, after the original order was violated and a period of time passed, then the order, at least what appears in the excerpt of records, is simply continuing the preliminary injunction. There's no determinate, these are the terms under which the funds are held, these are the terms under which the funds can be- The original order required that at least the proceeds of that, now keep in mind, Your Honor, that only 230,000, this is out of a $2.5 million judgment. So there were various transactions involved, but in this case, these were real estate contracts that had been assigned out as security to a party. And the proceeds that were being paid were being paid over to this party. And so the order dealt with those, the contracts were paying off. And so- So she knew that there were parties that were making payments to Mr. Grayson. Clearly, at the point that order was entered, and there was a funding coming through on those contracts. So there was a piece of identifiable proceeds that were about to come, and they were being preserved. The original order called for that to be paid to a plaintiff. So the money was actually being attached pre-judgment under the Washington statute based upon some kind of showing of fraud. But it wasn't attached, Your Honor. I've never seen, to my knowledge, there was never a pre-judgment attachment that would come to fruition as a lien. Bankruptcy court will recognize a pre-judgment attachment as a lien, but that was not the procedural posture that happened in this case. Well, what the fine-cutness of this is somewhat disturbing. What would it have taken to make it into an attachment? It's because, I mean, as a practical matter, the way this was set up, she was – it was – there was a court order that if X happened, she was to get the money, right? X being the determination of the debt dispute. A court order that these funds would be preserved subject to determination is to attach. Exactly. That's what I think I just said. Okay. How is that different from an attachment? Well, a pre-judgment writ of attachment is an actual lien right that's created by statute. In this instance, the court creates a lien right. Because it was done by court and not according to a statute? It was not done – I mean, it's done under the authority of the court, but not under our pre-judgment writ of attachment statutory suit. So you're saying this was kind of a negotiated stipulation among the parties that was presented to the superior court for entry simply to approve the holding of the funds in the attorney's trust account? Absolutely. The order at the point – the order that's in question at this point was the earlier order where the judge ordered that. I don't know to what degree there had been stipulated, but – Had it been a pre-judgment writ of attachment, the clerk would have held the funds would – isn't that correct? Under the statute, isn't the clerk of the court the custodian? I think it's a different procedure, Your Honor, but a pre-judgment writ of attachment, the court itself is granting a type of lien interest that will come to fruition when the judgment is determined. I'm trying to determine, does the statute not provide that the legal custodian of whatever it is that's attached pursuant to the act? Not necessarily, Your Honor, Washington. It can also be that there's an injunction on the party. This – these liens that are attached, you presumably could then follow them if somebody is not a great faith purchaser. Well, I'm really having a problem understanding why, from the point of view of the Bankruptcy Code, it should care when the net effect, as I understand it, is precisely the same. What – in what method was used to reach the same result, whether it was one created by the judge for this case or one created by statute for a more general set of cases? The net effect is that the plaintiff ultimately is paid, Your Honor, but the issue here is whether Mr. Grayson still had a debt. And the appellant – I'm not having a problem with whether he still had a debt. He had a debt. I want to talk about the security question. Whether – whether the proceeds at that point are secured, they don't meet the definition of secured under any statute that I am aware of. I'm trying – but what you seem to be telling us is that if it had been pretty much the same thing had been done, i.e. the money had been put aside in a bank account, but done under the Washington pre-attachment – pre-judgment attachment statute, that would have been secure. By – by statute, yes. And, Your Honor, this would never be the same. So the reason it isn't just because it wasn't done according to that statute, even if the net effect is exactly the same? I'm trying to understand what the difference is. Right. Well, I would argue that any time somebody had collateral or assets available to partially satisfy a debt, we don't assume, therefore, that they don't – that those debts that can be satisfied with assets that are not exempt are secured. And this is a business case. But this was under a court order, as I understand it, to put it aside, not dissipate it, and pay it over once the judgment was made. Well, the court order wasn't that specific, please. Secondly, Mr. Grayson retained interests here that are not clear. Again, going back to sort of the appellants relying on statutory – you know, cases that have statutory definition under Washington law, the attorney is still obligated to his client, and funds held in escrow still belong to the client. Of course, in a secured interest – Well, if they belong to the client, then they are in the estate. I'm sorry, excuse me? If they belong to the client, then they are in the estate, no?  I thought under Davis they're not in the estate. I would not say these funds were not in the estate. If they were in the estate. Any property interest the debtor has does come into the estate. Any property interest of whatever nature. The court ultimately found this was a direct diversion of funds that Ms. Tanaka – belonged to Ms. Tanaka, but they still – the interest, whatever it might be of the debtor, does come into the estate. The estate definition is very broad. If the Court has no other questions, I would just – I would briefly add that we never get to this argument unless we accept that these were the only debts that the Court was including as going over the jurisdictional limit. And, in fact, the order in the Court's oral findings would suggest otherwise. Thank you. Thank you for your argument. I want to follow up on a few matters that were raised by Ms. Kuno. If we're dealing with a consensual order here, I mean, that's the earmark of a security interest, two parties getting together and granting somebody a secured interest, and that would be a secured – Well, it could be. I agree with you. If I decide to mortgage my house, I'm voluntarily giving the bank a secured interest in my house to secure that loan. But why can't – why can't we declare that this kind of an agreement is different, that it's a – it's a civil fraud case? The plaintiff's lawyers obviously have concerns that Mr. Grayson is dissipating assets, that perhaps they threaten to pursue a writ of prejudgment attachment. But in the course of negotiations, the lawyers say, look, we don't know who actually is to hold my client's money in our attorney trust account until such time as a court can determine whether or not these funds are payable to Ms. Kuno. Then in that case, I – And your position is that's granting a security interest? Well, I don't – if it isn't granting a security interest, remember that the definition of security interest includes all kinds of liens, and the Bankruptcy Code recognizes other kinds of liens, including a judicial lien. You know, a judicial lien typically is a judgment. A judicial lien can also be an attachment. And if we're doing an order, neither of that. It's not an attachment under the statute, and it's certainly not a judicial lien because it hasn't been reduced to judgment yet. But you can have – but any – but a lien created by a court, even if it's short of a judgment – I mean, an attachment is a lien that's recognized in bankruptcy, and it falls under the definition of a judicial lien. It's not the manner – whether there's a judgment so much, but the manner in which the – the way the lien is created. You have liens that are created under the Bankruptcy Code by statute, a mechanics lien being a typical one, or a landlord's lien, a lien that's created by a court, which would be a judicial lien, and a consensual security interest. So there are all sorts of ways it could be done, but what is there here that had the legal effect of giving Tanaka any interest in those funds? It would be the order of the court. But it didn't. It was just – it embraced the notion, but it didn't give her an interest in the funds. Well, it gave her the same interest that she would have if the property had been attached. When a creditor attaches property, that lien is in co-ed and does not become co-ed until there's an actual judgment by the court, and then relates back to the date when the court actually sequestered the property. I don't – if – Well, is it the court – I mean, the problem I have is that – am I correct in characterizing this as a negotiated agreement between the parties, and then a form of order presented to the superior court to approve what the parties had agreed to do, with the tagline being that the funds will be held in pending further order of the court? Well, clearly the funds – I can – I can agree with your last statement. I would have to say that I'm not really clear under the circumstances. Clearly, there were two prior injunctive orders that were entered in this case. And presumably, perhaps, some civil contempt motion. And there was a – there's a suggestion that there was a civil contempt motion threatened and or pending at the time the agreement was entered into. So why – What would be the consequences, other than this, under the Bankruptcy Code, of calling this a security claim? Presumably, it's that there would be secured creditors for any reorganization plan in a different class, et cetera. I mean, what is the consequence of calling this a security claim? Well, the consequence is a number. One is that, to the extent it's secured, no other creditor can obtain a greater interest in the property than Ms. Tanaka has, based upon whatever interest she obtained by virtue of the order. And I think that's practically what happened. And that's what the Bankruptcy Court ruled, because it ultimately held that she had a direct interest in this fund, which was not attacked by the trustee. So the overall point is that this isn't going to go into the pot available for creditors in general? Did it go to the – It's not going to go into the pot available for secured creditors. It would not go into the pot for creditors in general, no. It would be her money to the extent that the court found that – it would go to her to the extent found – the court found that she had an interest in those funds. So it would not go to the pot for creditors. There's no way it could go to the pot for creditors unless that injunction that was entered in the Superior Court was dissolved. And the only way that could be dissolved is if Ms. Tanaka consented for the court, at the conclusion of the case, determined that she wasn't entitled to the funds. I mean, she was assured by virtue of that order that she would receive payment out of that raise at the conclusion of the trial in the bankruptcy court, should that trial have been determined in her favor, as it was. Do you have any background notions of why this requirement is in the calculation of the number for a chapter – for eligibility for Chapter 13? I mean, what's the idea behind this? Why the particular level of the number? That, but also the secured versus unsecured distinction. No. I mean, that number has shifted. I know the number, but why the secured versus unsecured? Why is it only unsecured debt that matters? Well, both matter. There is a secure debt limit. Right. There is a secure debt limitation. But it's much higher. It's much, much higher. And if this debt were characterized as a secured debt, it would – Is there some theory that beyond that, Chapter 13s don't work, or something like that? There must be a theory behind it. Well, the theory is that for people who had debts under a certain amount, that there should be a more simple procedure than having to go through the full organization – reorganization of Chapter 11. And then we had for many years the dispute whether an individual could file a Chapter 11. So Congress, it appears, wanted to create a simplified procedure for people who did not have a significant amount of liquidated debt. In truth, what happens is in many – we find in many cases we have debtors coming in with $4 million and $5 million worth of debt, but it's unliquidated and unsecured, which is essentially the same situation that we have in this case. All right. Thank you, Feinberg. Counsel, the matter just argued will be submitted.
judges: Rymer, Berzon, Tallman